## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LORENA GOMEZ,**

     *Plaintiff,*

       v.

**EXPERIAN INFORMATION
SOLUTIONS, INC.,
SYNCHRONY FINANCIAL,** *and*
**TRANS UNION LLC,**

     *Defendants.*

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Lorena Gomez** ("**Ms. Gomez**,") by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Experian Information Solutions, Inc.** ("**Experian**"), **Synchrony Financial,** doing business as **Synchrony Bank** ("**Synchrony**"), and **Trans Union LLC** ("**Trans Union**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Gomez against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION

2.    Subject matter jurisdiction for Plaintiff's FCRA claims arise under 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.     The Defendants are subject to the jurisdiction of this Court pursuant to §

48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C.

§ 1391(b)(2) because the acts complained of were committed and/or caused by the

Defendants in Hillsborough County, which is within the Middle District of Florida.

## PARTIES

### Ms. Gomez

5.     **Ms. Gomez** is a natural person residing in Ruskin, Hillsborough County,

Florida.

6.     Ms. Gomez is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Experian

7.     **Experian** is an Ohio corporation, with a principal business address of 475

Anton Blvd., Costa Mesa CA 92626.

8.     Experian is registered to conduct business in the State of Florida, where

its registered agent is **CT Corporation System, 1200 South Pine Island Rd.**

**Plantation, FL 33324**.

### Synchrony

9.     **Synchrony** is a Delaware corporation with a principal business address

of 170 Election Road, Suite 125, Draper, UT 84020.

10.    Synchrony's Delaware Registered Agent is **The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801.**

**Trans Union**

11.    **Trans Union** is a Delaware limited liability company, with a principal business address of 555 West Adams St., Chicago, IL 60661.

12.    Trans Union is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

**Experian & Trans Union are Credit Reporting Agencies**

13.    Both Experian and Trans Union are nationwide *Consumer Credit Reporting Agencies* ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, they regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce, specifically the mail and internet, for the purpose of preparing or furnishing consumer reports.

14.    As CRAs, both Experian and Trans Union are aware of their obligations under the FCRA.

## FACTUAL ALLEGATIONS

### The CareCredit Account

15.     Sometime in or around April 2022, Ms. Gomez needed to finance dental work.

16.     While at her dentist's office, and at the suggestion of office staff, Ms. Gomez opened a CareCredit account issued through Synchrony to finance the costs of her dental work (the "**CareCredit Account**").

17.     CareCredit accounts are intended for use at certain medical providers, like dentists, primary care physicians, hospitals, optometrists, and cosmetic surgeons.

18.     Ms. Gomez charged the dental work to the CareCredit Account and has settled the balance in full with Synchrony.

19.     Dental procedures are considered medical procedures.

20.     Pursuant to the FCRA, the term "medical information" means "information or data, whether oral or recorded, in any form or medium, created by or derived from a health care provider or the consumer, that relates to … the provision of health care to an individual." *See* 15 USC 1681a(i)(1)(B).

21.     As the full amount of the purported balance of the CareCredit Account related to charges concerning the provision of health care to Ms. Gomez, any reported balance on the CareCredit Account was "medical information" as defined by the FCRA.

22.    Both Experian and Trans Union, like the other major nationwide CRAs, require furnishers of data like Synchrony to report a "creditor classification code" ("CCC") which indicates the nature of the transaction.

23.    A total of 15 different CCCs exist in the Metro 2® reporting language, which is a *lingua franca* used by the major nationwide CRAs to create uniform reporting standards.

24.    For example, a CCC of "02" means "medical/health care," and a CCC of "08" means "banking."

25.    Accounts reported with the "02" CCC are redacted and simply state "MEDICAL PAYMENT DATA" in reports that Experian and Trans Union furnish to third parties.

26.    If a consumer applies for a mortgage guaranteed through the Federal Housing Administration ("FHA") or any other government agent, accounts reported with the "02" CCC are excluded from the consumer's debt-to-income ratios.

27.    Almost all commercially used credit scores, including most versions of FICO® as well as Vantage® credit scores, weight adverse information reported with an "02" CCC significantly less severely against the consumer than adverse information reported with any other CCC.

28.    As of July 1, 2022, the major CRAs also delete paid derogatory tradelines from a consumer's credit history if the CCC is reported as "02" to ensure that

consumers are not unfairly harmed by paid medical debts which were previously derogatory.

29.     Additionally, the Consumer Financial Protection Bureau (CFPB) issued a final rule on January 7, 2025, titled "Prohibition on Creditors and Consumer Reporting Agencies Concerning Medical Information (Regulation V)" which amends Regulation V, implementing the FCRA, to prohibit CRAs from including medical debt information on consumer reports and credit scores sent to lenders.

### Ms. Gomez's Disputes of the CareCredit Account

30.     In or around May 2022, Synchrony started reporting the CareCredit Account to Experian and Trans Union.

31.     Synchrony reported the CareCredit Account tradeline as a non-medical debt to Experian and Trans Union.

32.     While Ms. Gomez settled her CareCredit Account balance in full with Synchrony, Synchrony reported multiple late payments on the account to Experian and Trans Union, which negatively affected Ms. Gomez's credit score.

33.     When it made its reports to Trans Union and Experian, Synchrony knew what the nature of the underlying debt was, as it had the original account statements in its possession.

34.     In April 2025, Ms. Gomez disputed the reporting of the CareCredit Account tradeline to Trans Union indicating that the balance, while settled, related to

charges for medical procedures and should be reported as such, and included a description of the medical procedure that the prior balance consisted of as well as an attachment of her dental office's billing statement. **SEE PLAINTIFF'S EXHIBIT A.**

35.    Ms. Gomez's attached billing statement from the dental office showed a credit applied to the bill by CareCredit. **SEE PLAINTIFF'S EXHIBIT B.**

36.    The information supplied by Ms. Gomez was sufficient for Trans Union to objectively and easily verify the data supplied to it by Synchrony was erroneous, *i.e.*, it was misreported as a non-medical debt when it was clearly medical debt.

37.    Since the account was purely medical debt and the balance was $0, Trans Union should have deleted the entire tradeline from Ms. Gomez's credit report.

38.    On information and belief, no employee or contractor at Trans Union actually read or reviewed the documents supplied by Ms. Gomez.

39.    Trans Union did not make any investigation on its own, and instead, sent Synchrony an *Automated Consumer Dispute Verification* ("ACDV") request through a system known as e-OSCAR and asked Synchrony to make a reasonable investigation into the dispute pursuant to the FCRA.

40.    When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

> [b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

41.    Synchrony responded to the ACDV request, confirming its tradeline was accurate. **SEE PLAINTIFF'S EXHIBIT C.**

42.    Synchrony had no basis to conclude the CareCredit Account was *not* medical in nature since its business records clearly showed that charges to the CareCredit Account consisted of only medical debt.

43.    If a furnisher of data to a CRA, like Synchrony, confirms disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* (11th Cir.) 827 F.3d 1295 (2016).

44.    The standard for judging the reasonableness of procedures "is what a reasonably prudent person would do under the circumstances." *Stewart v. Credit Bureau, Inc.,* 814 F.2d 47, 51 (D.C. Cir. 1984).

45.    Synchrony is a large bank which receives thousands of ACDVs each month.

46.    To minimize costs, Synchrony instructs its employees and contractors responding to ACDVs to quickly compare the information contained in the requesting CRAs file against Synchrony's own internal records.

47.    On information and belief, Synchrony does not authorize its employees to make any actual investigation at all, beyond a *de minimis* comparison of CRA records to Synchrony's own records.

48.    For this reason, a consumer who disputes something specific about the data being reported – such as an incorrect CCC – will have her information confirmed as "accurate" simply because Synchrony's own flawed records show as much, and, moreover, the employees/contractors answering the disputes are not trained to investigate disputes of this nature nor are they empowered to make such investigations.

49.    No objective, reasonable investigation was made; any reasonable investigation would have determined that the CareCredit Account should have been reported with a CCC of "02" meaning "medical/health care," as the information supporting this was objectively and readily available.

50.    In May 2025, Ms. Gomez again disputed the CareCredit Account to Trans Union, indicating that the CareCredit Account balance consisted of medical debt, described the medical procedure in detail, and requested that Synchrony update or delete its tradeline of the CareCredit Account to reflect that it was a medical debt.

51.    Trans Union once again failed to make any investigation of its own, and simply used an automated system to send another ACDV to Synchrony, asking it to make a reasonable investigation into Ms. Gomez's dispute.

52.     Synchrony responded to the ACDV that its information was reporting accurately and required no modification and should continue to report as a non-medical account with derogatory payment history.

53.     In May 2025, Ms. Gomez sent a dispute letter via certified mail to Experian regarding the CareCredit Account; once Experian received it, Experian simply scanned it without reading it and electronically transferred it to its dispute resolution contractors outside of the United States.

54.     Experian's dispute resolution contractors – almost all of which are not native English-speaking – quickly skimmed the dispute to determine which data furnisher should be sent an ACDV.

55.      Experian then sent an ACDV to Synchrony, asking it to make a reasonable investigation into Ms. Gomez's dispute.

56.     As before, Synchrony responded to the ACDV that the CareCredit Account tradeline was reporting accurately, required no modification, and should continue to report as a non-medical account with derogatory payment history.

57.     As the date of this filing, the CareCredit Account has not been updated to reflect that the account involved charges which were medical in nature.

### Experian & Trans Union Make Unreasonable Investigations

58.     CRAs such as Experian and Trans Union are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

59.     On information and belief, rather than conduct its own independent reinvestigation, Experian, in response to the dispute received from Ms. Gomez, merely relied on the dispute responses from Synchrony, blindly accepting the results and updating its reporting accordingly.

60.     Likewise, on information and belief, rather than conduct its own independent reinvestigation, Trans Union, in response to the disputes received from Ms. Gomez, merely relied on the dispute responses from Synchrony, blindly accepting the results and updating its reporting accordingly.

61.     Experian and Trans Union each determined that the electronic verification of the tradeline by Synchrony – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than anything proffered by Ms. Gomez, even though Ms. Gomez's disputes and version of events were far more probable than that of Synchrony's. Moreover, even a cursory review of the CareCredit website quickly reveals the product is a medical-only charge card.

62.     Upon receipt of the ACDV responses, Experian utilized an automated system which made rudimentary checks of tradeline data between what Synchrony had reported and the data contained in Experian's own file on Ms. Gomez, *e.g.*, her name, address, date of birth, and Social Security number.

63.     Likewise, Trans Union addressed the CareCredit Account tradeline with the same lack of thoroughness.

64.     Such automated processes will not do anything to correct medical payment data reported as non-medical.

65.     For at least the last 40 years, courts in this district have recognized that a CRA cannot rely solely upon its data furnisher when the consumer disputes the accuracy of the furnisher's representations.

66.     The CRA must make some independent investigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].")

67.     Experian and Trans Union were obligated to do more than merely send ACDVs to Synchrony to investigate Ms. Gomez's disputes because Ms. Gomez had specifically highlighted the issue in her disputes, which included an account statement, among other details.

68.     Experian has furnished reports to Brandon Hyundai, Exeter Finance, AC Autopay LLC, and Progressive Insurance, and other creditors and potential creditors which contained the CareCredit Account improperly reported as a non-medical debt by Synchrony.

69.     The reports furnished by Experian to Brandon Hyundai, Exeter Finance, AC Autopay LLC were in connection with the financing of a car.

70.    On information and belief, the reports contained a FICO® Automotive Score, either version 8, 9 or 10; all of these scoring models weigh medical debt significantly less severely than non-medical debt.

71.    In each instance, Ms. Gomez was either denied credit or offered credit on less-favorable terms.

72.    Insurance companies like Progressive Insurance utilize consumer credit data in their underwriting of auto insurance policies under the belief that there is a strong correlation between poor financial performance and an increased likelihood of at-fault accidents occurring.

73.    Thus, on information and belief, data sold by Experian also contributed to offers of insurance being made to Ms. Gomez at rates higher than otherwise would have been offered.

74.    Trans Union has furnished reports to DHI Mortgage, Midwest Mortgage Associates, Brandon Hyundai, Flagship Credit Acceptance, and other creditors and potential creditors which contained the CareCredit Account improperly reported as a non-medical debt by Synchrony.

75.    The two credit reports sold by Trans Union in connection with an application for a mortgage were used by the respective lenders to evaluate Ms. Gomez for a low-down-payment home loan guaranteed through the Federal Housing Administration ("FHA").

76.    FHA underwriting guidelines specifically *exempt* medical debts appearing on a consumer's credit report from consideration in a consumer's computed debt-to-income ratios.

77.    On information and belief, the reports furnished by Trans Union to Flagship Auto Acceptance and Brandon Hyundai also contained a FICO® Automotive Score, either version 8, 9 or 10; as aforementioned, all of these scoring models weigh medical debt significantly less severely than non-medical debt.

78.    In each instance, Ms. Gomez was either denied credit or offered credit on less-favorable terms.

79.    Ms. Gomez suffered from lost time and stress from having to seek counsel in order to rectify the wrongly reported information, after attempting to resolve the problem herself through multiple disputes to Synchrony.

80.    Ms. Gomez suffered significant impairment to her credit and scores and had adverse credit decisions made because of this, due to the Defendants' reporting of the CareCredit Account as non-medical.

81.    Ms. Gomez has hired the undersigned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## <u>SYNCHRONY'S WILLFUL VIOLATIONS OF THE</u>
## <u>FCRA, 15 U.S.C. § 1681s-2(b)</u>

82.    Ms. Gomez adopts and incorporates paragraphs 1 – 81 as if fully stated herein.

83.    Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed to make reasonable investigations after notice of disputes from a CRA, as any reasonable investigation would have concluded the CareCredit Account – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, Synchrony's reported information was not accurate and complete without modification.

84.    The information Synchrony reported and verified was clearly inaccurate, and indeed no reasonable investigations were actually conducted by Synchrony.

85.    Synchrony's actions were either willful and intentional or, alternatively, it acted with reckless disregard for its duties under the FCRA to make reasonable investigations.

86.    It is reasonably foreseeable that Synchrony's actions and policies would cause Ms. Gomez harm.

87.    Synchrony's conduct caused Ms. Gomez to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

88.     Accordingly, Synchrony is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Gomez's actual damages or statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Gomez respectfully requests this Honorable Court enter judgment in her favor, and against Synchrony, for:

    a.  The greater of Ms. Gomez's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.  Such other relief that this Court deems just and proper.

## COUNT II
## SYNCHRONY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### (Pled in the Alternative to Count I)

89.     Ms. Gomez adopts and incorporates paragraphs 1 – 81 as if fully stated herein and pled strictly in the alternative to Count I.

90.     Synchrony violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct reasonable investigations after notice of disputes from a CRA, as any reasonable investigation would have concluded the CareCredit Account – which was entirely medical in nature – should be reported with a CCC of "02" and, as such, Synchrony's reported information was not accurate and complete without modification.

91.     Synchrony received notice of a dispute multiple times from Experian and Trans Union.

92.     Synchrony owed Ms. Gomez a legal duty to conduct reasonable investigations upon receiving such notice.

93.     Synchrony breached this duty when it failed, multiple times, to conduct a reasonable investigation.

94.     It is reasonably foreseeable that Synchrony's actions and policies would cause Ms. Gomez harm.

95.     Synchrony's conduct caused Ms. Gomez to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account being reported which she disputed to no avail.

96.     Synchrony acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Gomez's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Gomez respectfully requests this Honorable Court enter judgment in her favor, and against Synchrony, for:

    a.  Ms. Gomez's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c.  Such other relief that this Court deems just and proper.

## COUNT III
## <u>EXPERIAN'S WILLFUL VIOLATIONS OF THE</u>
## <u>FCRA, 15 U.S.C. § 1681i(a)(1)(A)</u>

97.     Ms. Gomez adopts and incorporates paragraphs 1 – 81 as if fully stated herein.

98.     Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to make a reasonable investigation into the May 2025 dispute from Ms. Gomez regarding the CareCredit Account, since any reasonable investigation would have concluded the CareCredit Account was medical in nature. As it was a paid medical debt, the tradeline should have been deleted.

99.     Experian's conduct was a result of its regular policies and procedures, which outsource investigations to its data furnishers.

100.    Experian's conduct was willful and intentional, or, alternately, Experian acted with reckless disregard for its duties under the FCRA to investigate consumer disputes.

101.    Experian is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Gomez's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Gomez respectfully requests this Honorable Court enter judgment in her favor, and against Experian, for:

a. The greater of Ms. Gomez's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

**COUNT IV**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**
**(Pled in the Alternative to Count III)**

102.    Ms. Gomez adopts and incorporates paragraphs 1 – 81 as if fully stated herein and strictly pled in the alternative to Count III.

103.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable reinvestigation into the May 2025 dispute from Ms. Gomez regarding the CareCredit Account, since any reasonable investigation would have concluded the CareCredit Account was medical in nature. As it was a paid medical debt, the tradeline should have been deleted.

104.    Experian owed Ms. Gomez a legal duty to conduct reasonable investigations upon receiving notice that Ms. Gomez disputed the CareCredit Account.

105.    Experian breached this duty when it failed to conduct a reasonable investigation

106.   Experian's conduct was negligent, and Experian is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Gomez's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Gomez respectfully requests this Honorable Court enter judgment in her favor, and against Experian, for:

    a.   Ms. Gomez 's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

    c.   Such other relief that this Court deems just and proper.

### COUNT V
### TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

107.   Ms. Gomez adopts and incorporates paragraphs 1 – 81 as if fully stated herein.

108.   Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into the April 2025 and May 2025 disputes from Ms. Gomez regarding the CareCredit Account, since any reasonable investigation would have concluded the CareCredit Account was medical in nature. As it was a paid medical debt, the tradeline should have been deleted.

109.   Trans Union's conduct was a result of its regular policies and procedures, which outsource investigations to its data furnishers.

110.    Trans Union's conduct was willful and intentional, or, alternately, Trans Union acted with reckless disregard for its duties under the FCRA to investigate consumer disputes.

111.    Trans Union is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Gomez's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Gomez respectfully requests this Honorable Court enter judgment in her favor, and against Trans Union, for:

a.   The greater of Ms. Gomez's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VI**
**TRANS UNION'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**
**(Pled in the Alternative to Count V)**

112.    Ms. Gomez adopts and incorporates paragraphs 1 – 81 as if fully stated herein and strictly pled in the alternative to Count V.

113.    Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into the April 2025 and May 2025 disputes from

Ms. Gomez regarding the CareCredit Account, since any reasonable investigation would have concluded the CareCredit Account was medical in nature. As it was a paid medical debt, the tradeline should have been deleted.

114.    Trans Union owed Ms. Gomez a legal duty to conduct reasonable investigations upon receiving notice that Ms. Gomez disputed the CareCredit Account, on multiple occasions.

115.    Trans Union breached this duty when it failed, multiple times, to conduct a reasonable investigation.

116.    Trans Union's conduct was negligent, and Trans Union is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Gomez's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Gomez respectfully requests this Honorable Court enter judgment in her favor, and against Trans Union, for:

a.  Ms. Gomez 's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Gomez hereby demands a jury trial on all issues so triable.

Respectfully submitted on July 24, 2025, by:

> **SERAPH LEGAL, P.A.**
>
> /s/ *Brandon D. Morgan*
> Brandon D. Morgan, Esq.
> Florida Bar Number: 1015954
> BMorgan@SeraphLegal.com
> Thomas M. Bonan, Esq.
> Florida Bar Number: 118103
> TBonan@SeraphLegal.com
> 2124 W. Kennedy Blvd., Suite A
> Tampa, FL 33606
> Tel: 813-567-1230
> Fax: 855-500-0705
> *Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A       Plaintiff's Dispute to Trans Union, April 28, 2025 - Excerpt
B       Plaintiff's Dental Bill – Excerpt
C       Plaintiff's Trans Union Dispute Results, May 7, 2025 – Excerpt